# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## WESTERN DIVISION

| | | |
|---|---|---|
| **LORI K.,**[1] | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **No. 22 C 50367** |
| **v.** | ) | |
| | ) | **Magistrate Judge Laura K. McNally** |
| **MARTIN O'MALLEY,** | ) | |
| **Commissioner of Social Security,**[2] | ) | |
| | ) | |
| **Defendant.** | ) | |

## <u>ORDER</u>[3]

Before the Court is Plaintiff Lori K.'s memorandum in support of summary judgment, asking the Court to remand the Administrative Law Judge's ("ALJ") decision denying her applications for disability benefits (D.E. 15: Pl. Mem. in Support of Summ. J., "Pl. Mem.") and Defendant's response in support of summary judgment (D.E. 20: Def. Mot. for Summ. J., "Resp.").

---

[1] The Court in this order is referring to Plaintiff by her first name and first initial of her last name in compliance with Internal Operating Procedure No. 22 of this Court.

[2] The Court substitutes Martin O'Malley for his predecessor, Kilolo Kijakazi, as the proper defendant in this action pursuant to Federal Rule of Civil Procedure 25(d) (a public officer's successor is automatically substituted as a party).

[3] On October 31, 2022, by consent of the parties and pursuant to 28 U.S.C. § 636(c) and Local Rule 73.1, this case was reassigned to the magistrate judge for all proceedings, including entry of final judgment. (D.E. 8.)

I.      **Procedural History**

Plaintiff applied for disability insurance benefits ("DIB") on December 23, 2019 and for supplement security income ("SSI") on June 26, 2020, alleging disability for both claims beginning December 4, 2019.[4] (R. 276.) Her date last insured was December 31, 2019. (R. 15.) Relevant to this action, Plaintiff previously filed three applications for DIB and SSI. (R. 93.) In the first of those decisions, and ALJ denied her application and then the Appeals Counsel denied review in 2014 and in the second, an ALJ denied Plaintiff's claims on September 28, 2016 and the Appeals Council again denied review. (*Id.*) In the third case, which Plaintiff filed on October 31, 2017, ALJ Kevin Vodek found that the doctrine of *res judicata* applied to the first two decisions. (R. *Id.*) He considered whether Plaintiff was disabled beginning October 2016, and after a September 2019 hearing ultimately decided on December 3, 2019 that she was not. (R. 104.) Plaintiff subsequently filed the instant action, which was also assigned to ALJ Vodek.

ALJ Vodek held a hearing on August 16, 2021 and subsequently ordered the claimant to attend a consultative examination, which she did on December 1, 2021. (R. 1226-40.) Plaintiff and her attorney received the report, imaging and opinion from the consultative examiner and were given time to submit a response to the ALJ prior to his decision. (R. 15.) Plaintiff did not submit a response to the report and on February 15,

---

[4] Plaintiff's original alleged onset date was January 1, 2008 but at the hearing and after conferring with counsel, she amended her onset date to December 4, 2019, the day after ALJ Vodek's opinion denying her previous application. (R. 15.)

2022, the ALJ issued a written decision denying Plaintiff's application, finding her not disabled under the Social Security Act (the "Act") from her amended onset date until the date of the decision.[5] (R. 24.) This appeal followed. For the reasons discussed herein, Plaintiff's motion is granted and the Commissioner's motion is denied.

## II.     The ALJ Decision

The ALJ applied the Social Security Administration's ("SSA") five-step sequential evaluation process to Plaintiff's claims. At Step One, the ALJ found that the Plaintiff had not engaged in substantial gainful activity since her alleged onset date (R. 17.) At Step Two, the ALJ determined that Plaintiff had the following severe impairments: lumbar degenerative disc disease, migraine headaches, and obesity. (*Id.*) At Step Three, the ALJ found that none of Plaintiff's impairments met a Listing. (R. 30-31.) Before Step Four, the ALJ determined that Plaintiff had a residual functional capacity for:

> "light work as defined in 20 CFR 404.1567(b) and 416.967(b) except for the following limitations: occasionally operate left foot controls or push/pull with the left lower extremity; frequently reach in all directions or handle/finger with the left upper extremity; never climb ladders, ropes or scaffolds; occasionally climb ramps or stairs; occasionally balance, stoop, kneel, crouch or crawl; never work around unprotected heights, around moving mechanical parts, or operate a commercial vehicle; occasionally be exposed to dust, odors, fumes and pulmonary irritants; can be exposed to only a moderate level of noise as defined in the Selected Characteristics of Occupations (SCO) with lighting limited to an office-like setting." (R. 19.)

---

[5] The Appeals Council subsequently denied review of the opinion (R. 1), making the ALJ's decision the final decision of the Commissioner. *Bertaud v. O'Malley*, 88 F.4th 1242, 1244 (7th Cir. 2023).

At Step Four the ALJ found Plaintiff was unable to perform her previous job as a deli clerk, but found at Step Five that there were significant jobs in the national economy Plaintiff could perform. (R. 23.) Therefore, the ALJ held that Plaintiff was not disabled. (R. 24.)

III.     **Legal Standard**

Under the Act, a person is disabled if she has an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(a). To determine whether a plaintiff is disabled, the ALJ considers the following five questions, known as "steps," in order: (1) Is the plaintiff presently unemployed? (2) Does the plaintiff have a severe impairment? (3) Does the impairment meet or medically equal one of a list of specific impairments enumerated in the regulations? (4) Is the plaintiff unable to perform her former occupation? and (5) Is the plaintiff unable to perform any other work? 20 C.F.R. § 416.920(a)(4). An affirmative answer at either step three or step five leads to a finding that the plaintiff is disabled. *Young v. Sec'y of Health & Human Servs.*, 957 F.2d 386, 389 (7th Cir. 1992). A negative answer at any step, other than at step three, precludes a finding of disability. *Id.* The plaintiff bears the burden of proof at steps one to four. *Id.* Once the plaintiff shows an inability to perform past work, the burden then shifts to the Commissioner to show the

4

plaintiff's ability to engage in other work existing in significant numbers in the national economy. *Id.*

The Court does not "merely rubber stamp the ALJ's decision on judicial review." *Prill v. Kijakazi*, 23 F.4th 738, 746 (7th Cir. 2022). An ALJ's decision will be affirmed if it is supported by "substantial evidence," which means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019). "[T]he threshold for such evidentiary sufficiency is not high." *Id*. ALJs are "subject to only the most minimal of articulation requirements" and "need not address every piece or category of evidence identified by a claimant, fully summarize the record, or cite support for every proposition or chain of reasoning." *Warnell v. O'Malley*, 97 F.4th 1050, 1053 (7th Cir. 2024). "All we require is that ALJs provide an explanation for how the evidence leads to their conclusions that is sufficient to allow us, as a reviewing court, to assess the validity of the agency's ultimate findings and afford the appellant meaningful judicial review." *Id*. at 1054. The Seventh Circuit added that "[a]t times, we have put this in the shorthand terms of saying an ALJ needs to provide a 'logical bridge from the evidence to his conclusion.'" *Id*. (citation omitted). The Seventh Circuit further has clarified that district courts, on review of ALJ decisions in Social Security appeals, are subject to a similar minimal articulation requirement: "A district (or magistrate) judge need only supply the parties . . . with enough information to follow the material reasoning underpinning a decision." *Morales v. O'Malley*, 103 F.4th

469, 471 (7th Cir. 2024). The district court's review of the ALJ's opinion "will not reweigh the evidence, resolve debatable evidentiary conflicts, determine credibility, or substitute its judgment for the ALJ's determination." *Chavez v. O'Malley*, 96 F.4th 1016, 1021 (7th Cir. 2024) (internal quotations omitted).

## IV.  Analysis

Plaintiff argues generally that the ALJ did not support his RFC determination with substantial evidence, and more specifically that the ALJ erred (1) by failing to employ the SSA's special technique for evaluating mental impairments, (2) by mischaracterizing the post-hearing consultative examiner's opinion, and (3) by finding her occipital neuralgia was not a severe impairment. (Pl. Mem. at 6, 8, 11.) Having considered the record and the parties' briefs, the Court finds that the ALJ erred in his consideration of the consultative examiner's medical opinion. Therefore, remand is required.[6]

### A.  The Consultative Examination

After the ALJ ordered Plaintiff to undergo a post-hearing consultative examination, Kamiesh Ramchandani, M.D., examined Plaintiff on December 1, 2021. He concluded that because of Plaintiff's back pain, she was able to sit for 20 minutes at one time, stand for 30 minutes at one time, and walk for 15 minutes at one time. (R. 1236.) In

---

[6] Because the Court remands on the issue of the ALJ's consideration of the medical opinion, it does not reach Plaintiff's other assignments of error.

an eight-hour workday, she could sit, stand, and walk for a total of two hours each, and needed to rest for the remaining two hours. (*Id.*) Due to neck pain, she was limited to occasional reaching overhead or elsewhere. (R. 1237.)

The ALJ offered three reasons for finding Dr. Ramchandani's opinion not persuasive: (1) contemporaneous x-rays showed only mild degenerative disc disease and thus did not support the doctor's opinion; (2) some of Dr. Ramchandani's limitations were inconsistent with Plaintiff's hearing testimony;[7] and (3) other parts of Dr. Ramchandani's opinion relied on Plaintiff's subjective allegations, which the ALJ characterized as "based on medical evidence from the prior record and which were addressed and denied in the last ALJ decision." (R 22.) The Court finds flaws with the ALJ's reasons to discount this consultative medical opinion and concludes that the ALJ's decision is not supported by substantial evidence.

When deciding how much weight to give a medical opinion, an ALJ is required to "evaluate the persuasiveness of each medical opinion based on certain factors: (1) supportability; (2) consistency; (3) the medical source's relationship with the claimant;

---

[7] The only inconsistency the ALJ notes is Dr. Ramchandani's opinion that Plaintiff could only occasionally reach overhead and elsewhere. (R. 22.) The alleged inconsistency seems to be based on the ALJ's understanding that Plaintiff testified she had no problem reaching overhead. (R. 20.) But that is not an accurate recitation of Plaintiff's testimony. Instead, at the hearing, Plaintiff testified that on days the nerve in her neck is acting up, she has difficulty reaching overhead, and no difficulty if the nerve is not bothering her. (R. 45.) Moreover, Dr. Ramchandani's examination found Plaintiff had a reduced range of motion in her shoulders. Therefore, there is no inconsistency between Plaintiff's testimony and Dr. Ramchandani's opinion, and the ALJ's reliance on one is erroneous.

(4) specialization; and (5) other factors, including the source's familiarity with other evidence in the claim or an understanding of Social Security disability policies and requirements." *Michelle D. v. Kijakazi*, No. 21 C 1561, 2022 WL 972280, at *4 (N.D. Ill. Mar. 31, 2022). *See also* 20 C.F.R. § 416.920c(c)(1)-(5). An ALJ must explain how he considered the first two factors (supportability and consistency) but is not required to explain her consideration of the other factors. 20 C.F.R. § 416.920c(b)(2). "Supportability measures how much the objective medical evidence and supporting explanations presented by a medical source support the opinion." *Michelle D.*, 2022 WL 972280, at *4; 20 C.F.R. § 416.920c(c)(1). "Consistency assesses how a medical opinion squares with other evidence in the record." *Id*. *See also* 20 C.F.R. § 416.920c(c)(2).

The ALJ's rejection of a consultative examination he ordered is an unusual step because consultative examiners are agency doctors and are unlikely to exaggerate an applicant's disability. *Garcia v. Colvin*, 741 F.3d 758, 761-62 (7th Cir. 2013) (citing *Bjornson v. Astrue*, 671 F.3d 640, 647 (7th Cir. 2012)). "As a general rule, an ALJ is not required to credit the agency's examining physician in the face of . . . compelling evidence . . . . But rejecting or discounting the opinion of the agency's own examining physician that the claimant is disabled, as happened here, can be expected to cause a reviewing court to take notice and await a good explanation for this unusual step." *Beardsley v. Colvin*, 758 F.3d 834, 839 (7th Cir. 2014); *see also* 20 C.F.R. §§ 404.1520c(c)(3)(v), 416.920c(c)(3)(v) ("A medical source may have a better understanding

of your impairment(s) if he or she examines you than if the medical source only reviews evidence in your folder."). Further, an ALJ should not rely on his own interpretation of exam findings instead of a doctor's professional judgment. *See Stage v. Colvin*, 812 F.3d 1121, 1125 (7th Cir. 2016). As explained below, the ALJ made a number of mistakes when deciding to reject the findings of the consultative examiner, and those mistakes compel remand.

B. The ALJ's Prior Decision

One of the reasons the ALJ rejected Dr. Ramchandani's opinion was because it relied on Plaintiff's subjective complaints of pain, which the ALJ considered to have been adjudicated in his prior decision, in which he found Plaintiff could work at the light exertional level. The ALJ seems to reason that he may rely on his earlier decision as evidence that Plaintiff was not disabled at the later date she saw Dr. Ramchandani. That is, he asks the Court to find substantial evidence supports his current decision because, he asserts, his last decision was supported by substantial evidence.[8] Agreeing with that conclusion would require the Court to first evaluate the entire prior medical record and the ALJ's earlier decision, which it declines to do. *See Betty B. v. Saul*, No. 19-CV-7699, 2021 WL 678746, at *4 (N.D. Ill. Feb. 22, 2021), citing *Herrman v. Astrue*, 2010 WL 356233,

---

[8] The Court acknowledges that SSA regulations state that an ALJ's decision becomes binding if it is not appealed to the Appeals Council within 60 days. See 20 CFR § 416.1468, *Smith v. Berryhill*, 587 U.S. 471, 476, 139 S. Ct. 1765, 1772, 204 L. Ed. 2d 62 (2019). But in this case, the record is silent as to whether the ruling was appealed and, if so, whether those appeal rights have been finally adjudicated.

at *12 (N.D. Ill. Feb. 1, 2010) (Judges are not "archaeologists consigned to excavating masses of paper in search of possibly revealing information that might benefit the party whose briefs provided no clue of where to dig."); *See also, Estate of Moreland v. Dieter*, 395 F.3d 747, 759 (7th Cir. 2005) ("We will not scour a record to locate evidence supporting a party's legal argument.").

Moreover, even if the Court were to find the ALJ's prior decision was supported by substantial evidence, that face cannot account for Plaintiff's pain and other limitations at the time Dr. Ramchandani examined her two years later. There can be no logical bridge from two-year-old evidence to the ALJ's conclusion here. Indeed, if the ALJ intended to rely on his prior decision, there would be no reason for him to have ordered Plaintiff to undergo a new consultative examination. But he did order the examination, and Dr. Ramchandani gave his opinion after examining Plaintiff and talking to her about her symptoms. The ALJ's determination that his prior decision allowed him discount Dr. Ramchandani's opinion is therefore not supported by substantial evidence.

Next, the ALJ found Dr. Ramchandani's opinion unsupported by objective evidence because Plaintiff's neck and back x-rays showed only mild degenerative changes. (R. 22.) But the doctor did not see Plaintiff's x-rays, which she underwent the day after her consultative examination. The ALJ reached his own determination about the implications of the x-rays, concluding that they could not account for Plaintiff's pain

10

and limitations. The ALJ then supplanted Dr. Ramchandani's medical examination with his own evaluation of the x-rays. In doing so, the ALJ impermissibly usurped the role of doctor in evaluating the new medical evidence evidence.

"The Seventh Circuit has repeatedly held that an ALJ may not 'play doctor and interpret new and potentially decisive medical evidence without medical scrutiny.' " *Brian M. v. Kijakazi*, No. 22 C 191, 2023 WL 5852193, at *5 (N.D. Ill. Sept. 11, 2023) (quoting *McHenry v. Berryhill*, 911 F.3d 866, 871 (7th Cir. 2018)). Furthermore, "[t]he Seventh Circuit has been especially critical of ALJs' attempts to deduce the meaning of complex medical documents, such as MRIs." *Id.* (quoting *Tobias B. v. Kijakazi*, No. 20 C 2959, 2022 WL 4356857, at *6 (N.D. Ill. Sept. 20, 2022)); *Theresa M. v. Saul*, No. 19 C 3135, 2020 WL 7641286, at *5 (N.D. Ill. Dec. 23, 2020) ("[A]s the courts in this circuit have held on numerous occasions, it is for doctors, and not ALJs to interpret x-rays, MRIs, and other raw medical data, even if those scans appear to be mild or unremarkable.") While a radiologist characterized the x-rays as showing mild degenerative changes, the ALJ, and not a doctor, decided what that meant with respect to Plaintiff's pain. Therefore, the ALJ's determination was thus not supported by substantial evidence. (R. 1242.)

Finally, the ALJ erred in rejecting Dr. Ramchandani's opinion on the basis that Plaintiff, in the ALJ's view, overstated her symptoms to Dr. Ramchandani. (R. 22.) It is well-settled that the Court "will overturn the ALJ's evaluation of a claimant's subjective symptoms only if it is patently wrong, which means that the decision lacks any

11

explanation or support." *Hess v. O'Malley*, 92 F.4th 671, 679 (7th Cir. 2024) (internal quotations omitted). While the ALJ acknowledged Plaintiff's testimony about the severity of her symptoms, he made several errors when deciding Plaintiff's pain—in particular her back pain—was not as severe as she described.

At the hearing, Plaintiff testified that she injured her back ten years earlier, which causes pain to radiate down her left leg every day. (R. 41-42.) She characterized the pain as eight-to-ten on a ten-point scale and said she had been told nothing more could be done for it. (*Id.*) She also testified to having between one and six migraines per month due to a "bad nerve" in her neck and stated that no medication helped alleviate the pain. (R.43.) Plaintiff testified that she could stand for 20 minutes and walk less than a block; she further testified that she had to keep moving positions and elevate her leg because of back pain. (R. 46.)

The ALJ rejected Plaintiff's allegations about her back pain because (1) she only needed to use a cane sometimes, when her knee was bad; (2) although she complained of neck pain, x-rays only showed mild degenerative changes in her cervical spine; (3) she complained of mental health struggles but had not been treated by a therapist; (4) despite complaints of pain and migraine pain she once told a doctor it was not better, but manageable, and that she got some relief from the painkiller Tramadol; and (5) although she said she needed her inhaler once every two weeks and was short of breath, she denied "cough, wheezing, dyspnea or hemoptysis" during a single telehealth visit.

(R 21.) Additionally, the ALJ noted Plaintiff's three prior ALJ denials since 2012, reflecting "essentially the same allegations," before concluding that the past record showed no evidence of worsening of symptoms "over time." (*Id.*) Again, the ALJ specifically cited to his own prior opinion as support for his conclusion that Plaintiff's symptoms had not become more severe. (R. 21.)

Plaintiff's testimony and medical records that she needed to use an inhaler once every two weeks is not necessarily inconsistent with a single telehealth appointment where she denied coughing, wheezing, labored breathing, or coughing up blood. (R. 1224.) Similarly, Plaintiff acknowledged at the hearing that she did not need a cane to help her walk and also admitted that her mental health impairments did not prevent her from working. (R. 45.) This is not a situation where the ALJ discounted the severity of a claimant's symptoms because of her failure to adhere to a medically ordered treatment plan. Instead, the ALJ concluded that Plaintiff's symptoms are not as severe as she alleged because she did not follow the treatments the ALJ thought appropriate.

All together, the record reflects multiple instances of the ALJ placing reaching conclusions that are reserved for medical professionals — while at the same time erroneously discounting the medical opinion that had been provided at his own direction. Remand is required.

## CONCLUSION

For the foregoing reasons, the Court grants Plaintiff's motion for summary

judgment seeking to reverse and remand the ALJ's decision (D.E. 15) and denies the

Commissioner's motion for summary judgment. (D.E. 20).

**SO ORDERED.**

**ENTER:**

**LAURA K. MCNALLY**
**United States Magistrate Judge**

**DATED: <u>December 27, 2024</u>**